## Peet *versus* City of Pittsburgh.

1. An appeal from the judgment of the mayor of Pittsburgh to the Court of Quarter Sessions was brought up to the Supreme Court on a certiorari from that court : *Held,* that this court is confined to the record and can pass only upon error apparent on its face unless *extra* the record a want of jurisdiction has been made to appear. With the evidence upon which the judgment is founded this court has nothing to do, even though it be incorporated in the opinion of the court, for that opinion is no more part of the record than is the evidence itself.

2. The facts and their application were for the mayor, who was the sole judge, subject only to the review of the Quarter Sessions, and although the facts are set out in the transcript from the mayor's docket, this court is not authorized to pass upon them.

November 10th 1880. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Certiorari to the Court of Quarter Sessions of *Allegheny county:* Of October and November Term 1880, No. 254.

In the court below this was an appeal by Robert Peet from the decision of the mayor of the city of Pittsburgh.

Robert Peet was a member of a committee appointed by a literary association to which he belonged, for the purpose of making necessary arrangements for the delivery of a lecture by B. F. Underwood, Esq., at Library Hall, Pittsburgh, on the evening of May 11th 1879, at 7.30 P. M. The title of the lecture was, " If Not Christianity, What ?" An admission fee of twenty-five cents was charged. No license was obtained from the mayor for the right of delivering such lecture, although an application was made for a license, but refused by the mayor.

On May 12th 1879, information was made against Peet before the mayor of Pittsburgh, and a warrant issued for his arrest, the charge being "for unlawfully exhibiting an entertainment and lecture by one B. F. Underwood, at Library Hall, in said city, on the evening of May 11th 1879, without first having received a license or permit from said mayor, contrary to a city

[Peet *v.* City of Pittsburgh.]

ordinance passed in pursuance of an Act of Assembly of the legislature of Pennsylvania." After a hearing the defendant was "duly convicted," the mayor being of the opinion "that the lecture, delivered on May 11th 1879, by B. F. Underwood, at Library Hall, was an exhibition," &c., &c., and imposed on the defendant a fine of "twenty-five dollars and costs, or in default of payment thereof, to be committed to the Allegheny county work-house for a period of twenty days." The defendant paid the fine. He then applied to and obtained from the Court of Quarter Sessions of Allegheny county the right to file in said court an appeal from the summary conviction of said mayor.

On March 17th 1880, the court below, White, A. L. J., filed the following opinion:

"The Act of April 6th 1867 gave the city 'power to regulate, license or prohibit all theatrical exhibitions and public shows, and all exhibitions, of whatever name or nature, for which money or any other reward is in any manner demanded or received. Provided, that lectures on historic, literary or scientific subjects shall not come within the provisions of this section.'

"The ordinance of the city prohibited all such exhibitions without a license first had from the mayor, and for a violation of the ordinance imposed a fine not exceeding $50.

"The appellant, on the 15th May 1879, was fined by the mayor $25 and costs, $3.40, for a violation of the ordinance. The alleged violation was an exhibition or entertainment by B. F. Underwood, on Sabbath evening, May 11th 1879, in Library Hall, under the auspices of the appellant and the Liberal League of Pittsburgh, at which admission tickets were sold.

"It is claimed by the appellant that the entertainment was simply a lecture of a scientific, literary or historic character, for which no license was required under the proviso of the act.

"This is a question of fact to be determined by the evidence. The mayor, at the hearing before him, heard the evidence and the argument of counsel, and decided it was not such a lecture, but was of such character as required a license under the Act of Assembly and the ordinance of the city. We have no evidence on the subject except what is set forth in the mayor's transcript. Whether it contains all the evidence heard by the mayor we are not informed. He is not bound to set forth and return to court all the evidence. In the absence of evidence to the contrary it is to be presumed he had sufficient evidence to justify the finding of the fact.

"In the transcript it appears that J. C. Kramer was sworn for defendant, and testified that he was the president of the League, and heard the lecture. He says: 'The subject was to teach and enlighten the people as to the character of Christianity and as to what materialists had to offer in its stead and to show the superi-

[Peet *v.* City of Pittsburgh.]

ority of the materialistic doctrine: If not Christianity, what? In the course of the lecture there was a discussion of the doctrine of evolution as taught by modern scientists.'

" That may be all true, and yet the lecture may have been an 'exhibition' in the meaning of the act. The leading object may have been to make money and give amusement, like all theatrical exhibitions, by a display or exhibition of acting or oratory.

" This view of the case is confirmed by the admissions before the mayor as set forth in the transcript, 'it is admitted the defendant was one of the committee of arrangements in procuring the attendance, and carrying out the lecture delivered by B. F. Underwood,' as set forth in the hand-bill: 'Library Hall. B. F. Underwood will deliver his famous lecture, entitled If not Christianity, What? under the auspices of the Pittsburgh Liberal League, Sunday evening, May 11th 1879, at 7½ o'clock. Admission 25 cents; no extra charge for reserved seats. Box open at hall Saturday and Sunday.' It is also set forth as a conceded fact, 'that application was made to the mayor for license or permit for such entertainment, to be exhibited on Sunday evening, May 11th 1879, and the issue of which was refused for said Sunday evening.'

" The fact of such application, and the terms in which it was made, 'for such entertainment to be exhibited,' are strong evidence that the parties applying considered it came within the class of entertainments or exhibitions requiring a license.

" Upon the evidence before us we cannot say the fine was improperly imposed. The appeal is therefore dismissed at cost of appellant."

Peet then took this writ and alleged that the court erred, 1. In not disposing of the appeal de novo. There having been no testimony offered by the prosecutor, as is evident from the record, the court should have reversed the judgment of the mayor, as the prosecutor was bound to establish his case de novo, and the court in an appeal could not pass on the merits of the case on the faith of the testimony set forth on the mayor's transcript, even though such transcript contained all the evidence submitted, which it did not. 2. The decision of the court should have been in the form of an original judgment, and should have specified that the offence committed was not within the exception of the city ordinance, under which the conviction was had, to wit, was not a " lecture on a historic, literary or scientific subject." 3. The act of defendant set out on the record was not contrary to law. 4. The judgment entered was not original.

*Josiah Cohen,* for plaintiff in error.—The lecture partook in its very nature of a " historic" and " literary" character, and was in no sense an exhibition. The docket entry shows that there was no

[Peet *v.* City of Pittsburgh.]

hearing before the court on the appeal, and it is evident the same was treated as a certiorari, and an opinion filed declaring, " the appeal is, therefore, dismissed at costs of appellant." That an appeal is to be tried and determined by the Superior Court de novo needs no argument, but in this case there was no hearing. The prosecution presented no witnesses, and the decree of the court was pronounced solely upon the faith of the testimony submitted in the transcript, as will appear from the following citation from the decision of the court when speaking on the question as to whether the performance was an exhibition or a lecture. The court says : " We have no evidence on this subject except what is set forth on the mayor's transcript." All the elements essential to the making up of a new judgment were wanting, and the sentence of the court was pronounced solely on an inspection of the transscript, as a review of the court's decision will emphatically disclose.

[SHARSWOOD, C. J.—What Act of Assembly gives an appeal in cases of this kind ?   I don't think we have any.]

The Act of 1876 gives an appeal from summary convictions. But this is not an appeal, it is a certiorari.

[PAXSON, J.—How does that appear, the record does not show it ?]

The opinion of the court shows it.

[PAXSON, J.—That is not a part of the record.]

*Thomas S. Bigelow,* for defendant in error.—The appeal of Peet came in its regular order for determination in the Court of Quarter Sessions before the Hon. J. W. F. White, and was fully argued by the counsel on both sides, and was submitted to the court as embracing everything upon or about which counsel desired to be heard.   A writ of error was the proper remedy here, as the order dismissing the appeal was equivalent to a judgment.

Mr. Justice GORDON delivered the opinion of the court, November 22d 1880.

This was an appeal from the judgment of Robert Liddell, mayor of the city of Pittsburgh, to the Court of Quarter Sessions, and comes to us on a certiorari from that court.   We are confined to the record, and can pass only upon errors apparent upon its face, unless extra the record, a want of jurisdiction has been made to appear: Shenango *v.* Wayne, 10 Casey 184 ; In re Church street, 4 P. F. Smith 353 ; Burginhofen *v.* Martin, 3 Yeates 479.   With the evidence upon which the judgment is founded we can have nothing to do, even though it be incorporated in the opinion of the court, for that opinion is no more part of the record than is the evidence itself: Mauch Chunk *v.* Nescopeck, 9 Harris 46 ; Bradford *v.* Goshen, 7 P. F. Smith 495.

[Peet *v.* City of Pittsburgh.]

What we are called to pass upon, in the case before us, is the jurisdiction of the mayor and the regularity of the record; but as neither of these is called in question our task is an easy one; we have but to affirm the court below.

The only thing complained of is that the facts of the case did not bring it within the ordinance, but within the exceptions therein mentioned; that the matter complained of was not such a public entertainment for which license was required, but a lecture exempted by the fourth section of the ordinance. This may be as stated; we are not disposed to controvert it; but then, that was for the mayor; of the facts and their application he was the sole judge, subject only to the review of the Quarter Sessions, and, though the facts are set out in the transcript from the mayor's docket, we are not authorized to pass upon them.

The record proper exhibits a case within the ordinance, and within the mayor's jurisdiction, the process and judgment are regular, and, such being the case, we can look no further.

Judgment affirmed.